IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Brian Richardson, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> K.C. Concepts, LLC, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 6:08-3186-HMH-BHH <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled causes of action for interference with Employee Retirement Income Security Act ("ERISA") rights; discriminatory discharge under the Americans with Disabilities Act ("ADA"); and retaliatory discharge under South Carolina Code Section 41-1-80 for filing a workers' compensation claim. The plaintiff, however, has expressly abandoned his claim pursuant to ERISA, which will, therefore, not be considered. (Pl. Resp. at 1.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

In approximately 1997, the plaintiff began working as a carpenter for Carlisle Construction, a residential framing and remodeling contractor. (Pl. Dep. at 121.) Carlisle Construction was the sole proprietorship of Parker Carlisle. (Carlisle Dep. at 6.) While working for Carlisle Construction in 2004, the plaintiff fell off of a ladder, injuring his knee and back. (Pl. Dep. at 129-132). The plaintiff filed a workers' compensation claim while still working for Carlisle Construction, as a result of those injuries. (Pl. Dep. at 132,

134.) Carlisle Construction's workers' compensation insurance carrier was The South Carolina Home Builders' Self Insured Fund ("SCHBSIF"). (Carlisle Dep. at 33; Pl. Dep. at 228-229.)

In April 2005, Carlisle Construction discontinued its operations. Carlisle decided to go into business with a Michael Kerley. They formed the defendant entity, K.C Concepts, LLC. (Carlisle Dep. at 6-7.) The defendant is also in the residential framing and remodeling business. (Carlisle Tr. 7).

The defendant contends that the plaintiff worked successfully until the spring of 2007, when his attendance, performance, and attitude deteriorated. (Kerley Dep. at 4, 18-19, 27-28; Carlisle Dep. at 73-75, 107; Pl. Dep. at 195-196, 203-05.) Additionally, in July 2007, the plaintiff was involved in an altercation with Paul Mitchell, a KCC employee he supervised. (Pl. Dep. at 154-155; Carlisle Dep. at 40-42, 67-68.) The plaintiff filed a second workers' compensation claim as to this matter as well. (Pl. Ex. K.)

Based upon the plaintiff's alleged substandard performance, his altercation with Mitchell, and his poor attendance, Carlisle and Kerley decided to terminate the plaintiff's employment. (Carlisle Dep. at 38, 78-79; Kerley Dep. at 4.) The plaintiff's employment was terminated on September 14, 2007. (Pl. Dep. at 300.)

The plaintiff contends that his termination was actually in retaliation to his having filed for workers' compensation and the effect those payments would have on the insurance premiums of the defendant.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

2

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that

3

> there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered
> against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

**I. ADA CLAIM**

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). At summary judgment, the defendant's exclusive objection to the plaintiff's ADA claim is that it does not qualified as a "covered entity." *Id*. A "[c]overed entity" includes "an employer, employment agency, labor organization, or joint-management committee." 42 U.S.C. § 12111(2); *see also Jones v. American Postal Workers Union*, 192 F.3d 417, 423 (4th Cir. 1999). The ADA defines "employer" as "a person engaged in an industry affecting commerce *who has 15 or more employees for each working day in each of 20 or more calendar weeks* in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A) (emphasis added). The "current" calendar year is the year in which the alleged discrimination occurred, in this case 2007. *See Binns v. The Primary Group, Inc.*, 23 F. Supp.2d 1363, 1366 (M.D. Fl. 1998); *Vick v. Foote, Inc.*, 898 F. Supp. 330, 332 (E.D. Va.1995). It appears that the Fourth Circuit considers the question as to whether or not an entity qualifies as an "employer" to be a jurisdictional one. *Jones*, 192 F.3d at 423. But the courts of appeals are split. *See Sharpe v. Jefferson Distributing Co.*, 148 F.3d 676, 677-78 (7th Cir.1998) (holding that question of whether employer has more than fifteen employees so as to be subject to Title VII is not jurisdictional, but merits related).

4

The defendant has put forward evidence that it never employed 15 or more employees for each work day in a calendar week during 2006-2007. (Blackwell Decl. ¶¶ 1-5, Ex. H.) The plaintiff essentially concedes that the defendant employs no more than 13 regular employees. (Pl. Resp. at 17.) The plaintiff argues, however, that the defendant should be considered as having employed between 15 to 20 individuals in light of the defendant's use of undocumented workers. In other words, the plaintiff contends that any contracted illegal aliens should also be counted for purposes of "covered entity" status.

In support, the plaintiff has put forward certain legal authorities of questionable relevance to the inquiry, over which both parties spend some time debating.[1] (See Pl. Resp. at 15-16.) The plaintiff has also made an effort to create issues of fact as to the usage of such undocumented workers. (Richardson Aff. ¶ 13; Pl. Dep. at 234, 255-56, 284-85; Atwood Aff. ¶ 4, 5.) Again, the parties have expended significant energy both at summary judgment and in opposing memorandum over a motion to strike the plaintiff's affidavit disputing the propriety of such evidence. [See Docs. 50, 65, 69.]

Notwithstanding the parties' disagreement, the Court believes these matters need not be precisely resolved. As the defendant emphasizes, even conceding the presence of some evidence that undocumented workers were employed by the defendant, and, further,

---

[1] As the plaintiff admits, none of his cited authorities actually consider whether undocumented workers should be counted when determining the 15 employee threshold. Instead, they concern the joint employer or integrated enterprise doctrines, which seem largely inapposite here. (See Pl. Resp. at 15.) The Court itself has researched the issue independently without success. The Court does not think that the argument advanced by the plaintiff is unpersuasive on its face. It seems possible that this or other courts might find as the plaintiff proposes. If it truly is a matter of first impression (which the Court doubts but cannot determine), then the undersigned would not be bashful about resolving it. It seems, however, as will be discussed *infra*, that the issue is not squarely implicated because the plaintiff has not otherwise put forward evidence that 15 employees were employed *for 20 calendar weeks*, even if the documented workers could be rightly counted. The Court is, therefore, reticent, as it always is, to reach out and resolve a matter, especially one so apparently undeveloped, if unnecessary. For these same reasons, it is equally impractical to consider whether certain loosely identified undocumented workers should be considered employees as opposed to independent contractors of the defendant. Even conceding that they are, the Court will address below the plaintiff's failure to establish the relevant time threshold of 20 calendar weeks for these individuals.

that the law would credit those individuals as "employees" of the defendant for purposes of reaching the 15 employee threshold, the plaintiff has still not satisfied his burden at summary judgment. Specifically, and as already discussed, to qualify as a covered entity the defendant must have employed *"15 or more employees for each working day in each of 20 or more calendar weeks* in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A) (emphasis added). As to this requirement, the plaintiff has offered absolutely no evidence. At best, the plaintiff's evidence suggests that at some moment or moments during the relevant time period, undocumented workers, in sufficient numbers, may have been used such that a total of 15 individuals or more were employed on that day or those days. As the defendant characterizes it, at best, the plaintiff has offered a "snapshot" of time. He has made no attempt to establish any degree of frequency much less the frequency necessary to make his ADA claim viable. The plaintiff has offered no evidence that would suggest that such relationship, in such numbers, existed for 20 or more calendar weeks in 2007. Even as the defendant raises this point in reply, the plaintiff sought no leave to sur-reply to it. It is the plaintiff's burden to so demonstrate. *See Association of Business and Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (holding that to survive a motion for summary judgment, a plaintiff bringing an ADA claim must carry his burden by a preponderance of the evidence). Other courts have dismissed ADA claims, where the plaintiff fails to carry that burden as to the defendant's total employees. *See Binns*, 23 F.Supp.2d 1363.

The Court so recommends here.

## II.     Workers' Compensation Retaliatory Discharge Claim

South Carolina prohibits an employer from discharging or demoting an employee because the employee has instituted or caused to be instituted in good faith any proceeding under South Carolina's Workers' Compensation Law. *See* S.C. Code §41-1-80. The employee carries the burden of proving that his discharge or demotion occurred because

6

he instituted proceedings under the South Carolina Workers' Compensation Law. S.C. Code § 41-1-80. To prove his claim, the plaintiff must show that (1) he instituted a workers' compensation claim, (2) he was discharged or demoted, and (3) a causal connection exists between the two events. *Hinton v. Designer Ensembles, Inc.*, 540 S.E.2d 94, 97 (S.C. 2000). The appropriate test for causation is the "determinative factor" test. *Id*. The determinative factor test requires the employee establish that he would not have been discharged "but for" the filing of his workers' compensation claim. *Id*. "The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remain at all times with the employee." *Id*. (omitting quotations).

As stated, the plaintiff suffered an on-the-job injury in July 2004. (Pl. Ex. A at 000184, 00087-97.) He timely filed a workers' compensation claim, and the SC Workers' Compensation Commission ("WCC") issued an interim order on July 26, 2006, and its final dispositive order on August 27, 2007). (Pl. Ex. A at 000184, 87-97, 227-231.) This first Workers' Compensation claim was finally resolved less than one week before the termination decision was made. (Pl. Ex. A at 227-231; Pl. Ex B.) During the interim, pending resolution of his claim, the plaintiff had been placed on light duty for lifting restrictions, and he continued to work for the defendant. (Pl. Ex. A, at 000184, 87-97, 227-231.)

In July 2007, the plaintiff was assaulted by a fellow employee and suffered another work-related injury. (Pl. Ex. N; Plf. Aff. ¶ 9; Pl. Ex. K.) The plaintiff filed a workers' compensation claim as to this matter as well. (Pl. Ex. K.) The plaintiff contends that he was never granted worker's compensation for these injuries, in spite of the defendant's promise that it would. (Pl. Dep. at 178; Pl. Aff. ¶ 9.)

The plaintiff contends that the following evidence creates issues of fact from which a jury could find that the institution of his worker's compensation was ultimately the

7

determinative factor in the decision of the defendant to terminate his employment.  First, the plaintiff contends that Parker Carlisle, the plaintiff's supervisor, made negative comments regarding the plaintiff's back and knee restrictions.  (Pl. Aff. ¶ 4; Pl. Dep. at 216, 239, 243, 251, 285.)  The plaintiff also contends that on several instances Carlisle suggested that the plaintiff was faking the severity of his injuries.  *Id*.  Moreover, the plaintiff claims that there were several instances when Carlisle required him to violate the restrictions and pick up excessive weight and/or bend excessively.  (See Ex. N, Aff. Pl. at ¶ 4; Pl. Dep. at 243,251.)

Even were the Court to credit these statements as permissible testimony for consideration by the jury, which the defendant partially disputes, they do not create issues of fact as to whether the plaintiff's initiation of a *worker's compensation* claim resulted in his termination.  These allegations may relate to the plaintiff's ADA claim that he was discriminated against on account of some disability, which the Court has already considered and rejected, but they do not relate to, or say anything specifically about, whether the defendant was motivated by the plaintiff's actual filing of a worker's compensation claim.

The plaintiff also contends that Carlisle specifically told him that the defendant might terminate the plaintiff due to increased premiums, his back injury, and his compensation claim.  (Pl. Aff. ¶ 7; Pl. Dep. at 188-91; 225, 227, 228, 285.)  Such statements would certainly create issues of fact as to the causation element of the plaintiff's retaliation claim if established by admissible evidence.  The evidence is somewhat confusing.  First, the plaintiff contends that Carlisle made such statements to a Paul Mitchell at a job promotion lunch in 2007.  *Id*.  Second, the plaintiff contends that, in either the spring of 2005 (Pl. Aff. ¶ 7) or late 2006/early 2007 (Pl. Dep. 188-90), Carlisle told him directly that he was causing the defendant's premiums to go higher and that the insurance company wanted the plaintiff terminated.  The Court will consider each in turn.

The plaintiff contends that Carlisle and Michael Kerley took Mitchell out to lunch to offer him the plaintiff's position. (Pl. Aff. ¶ 7.) The plaintiff alleges that at the lunch Mitchell was informed of the defendant's intent to terminate the plaintiff due to his workers' compensation claim. *Id*. Shortly thereafter, Mitchell relayed those statements to the plaintiff. Mitchell's statements, however, are inadmissible hearsay. Fed. R. Evid. 801 (c), 802. The statements do not qualify as the admission of a party-opponent, *see* Fed. R. Evid. 801, because there is no evidence that they were made concerning "a matter within the scope" of his employment. *Id*. In other words, the decision to, and the reasons for the plaintiff's termination were not matters about which Mitchell had authority to speak on behalf of the defendant. See *U.S. v. Portsmouth Paving Corp*., 694 F.2d 312, 321-22 (4th Cir. 1982). Importantly, the statement itself cannot be evidence that the matter is within the purview of his agency or employment with the defendant. *Id*. at 321 n.12. There is no evidence that Mitchell was asked to relay the statements or that it was otherwise in his job responsibilities to do so. *See id.* at 321-22. Critically, the plaintiff himself does not contend that Mitchell's comments are admissible as an admission of a party opponent. [Doc. 65 at 7-8.]

Instead the plaintiff contends that the statements (1) are being offered to show their effect on the listener, in this case the plaintiff, and (2) have independent legal significance in that they "bear directly on a substantive issue in this lawsuit – why Defendant terminated Plaintiff." [Doc. 65 at 7, 8.] These arguments hardly merit consideration and frankly strain the limits of permissible advocacy and candor to the Court. While it is true that hearsay statements are admissible when offered for reasons other than their truthfulness, including the reasons cited above, the plaintiff cannot reasonably believe such are the purposes here. The plaintiff offers these statements precisely for their purported truthfulness – that the plaintiff's employment was indeed terminated for having filed for worker's compensation. "If any third party statement could be admitted merely because it was heard (and

9

'perceived') by the witness, the entirety of hearsay jurisprudence would be nullified." *Hall v. C.I.A.*, 538 F. Supp. 2d 64, 69 (D.D.C. 2008) (rejecting arguments similar to the plaintiff's but based on Fed. R. Evid. 701). The Court will not consider the statements of Mitchell because they would not be admissible at trial. *See* Fed. R. Civ. P. 56(e)(1).

Moreover, Mitchell has since sworn under oath that he never had any such conversations about the plaintiff's worker's compensation claim or health condition. (Mitchell Dep. at 19.)

The plaintiff, however, also contends that Carlisle made similar statements directly to the plaintiff and to a similar effect – that the plaintiff's workers' compensation claim was increasing premiums and that the insurance company wanted him terminated. (Pl. Dep. at 188-90.) Besides some apparent confusion over the date such statements were made (Compare id. with Pl. Aff. ¶ 7), the statements were not otherwise witnessed and seem dubious in context. Why the insurance company, rather than the defendant, might want the plaintiff terminated, when it was the defendant's premiums which were ostensibly affected, is not clear. Moreover, the defendant has offered evidence that the insurance company at issue never actually provided workers' compensation coverage for the defendant.[2] (Hincapie Decl. ¶¶ 4-9; Carlisle Dep. at 36.) Of course these are considerations which go to the weight of the plaintiff's testimony; the Court may not resolve it at summary judgment.

Accordingly, the plaintiff has two pieces of evidence which would seem to save his workers' compensation claim. First, he has the temporal proximity of one week between the settlement of his workers' compensation claim and his termination. (Pl. Ex. A at 227-231; Pl. Ex B.) That proximity alone would not be enough in the face of a legitimate, non-retaliatory rationale for the termination of the plaintiff's employment, such as

---

[2] KCC secured workers' compensation insurance from the Accident Fund Insurance Company of America ("Accident Fund"), through its agent, Sullivan Company LLC ("Sullivan"). (Hincapie Decl. ¶¶ 4-9; Carlisle Dep. at 33.)

substandard performance, as offered here. *Hinton,* 540 S.E.2d at 97; *cf. Johnson v. J.P. Stevens & Co., Inc.*, 417 S.E.2d 527, 529 (S.C. 1992) ("In light of the conceded legitimate, nonretaliatory motives for the termination, [the] proximity in time does not meet the employee's burden of proof."); *Marr v. City of Columbia*, 416 S.E.2d 615 (S.C. 1992) (rejecting retaliatory discharge claim where only evidence suggesting retaliatory motive for discharge was temporal proximity of claim to discharge) *with Horn v. Davis Electrical Constructors, Inc.*, 416 S.E.2d 634, 636 (S.C. 1992) (finding that where temporal proximity of injury and discharge existed, "in addition to other retaliatory evidence in the record as well as [employer's] admission that evidence of retaliation existed," plaintiff established termination in violation of statute).

The plaintiff, however, has his own testimony, no matter how self-serving, which if believed might lead a jury to believe that Carlisle, in fact, indicated that the defendant would terminate his employment for having filed a successful workers' compensation claim. Of course, depending on which testimony of the plaintiff is to be believed, such statements were made conceivably two years prior to the plaintiff's termination. (See Pl. Aff. ¶ 7.) A jury, however, might contend that the comment is still relevant insofar as the threat, made at a much earlier time, was realized only once the plaintiff successfully secured payment on his claim. The defendant rejects that it had any knowledge that the plaintiff had settled his workers' compensation claim at the time his employment was terminated (Summ J. at 13; Pl. Dep. at 193-94) but the plaintiff has testified that he believes they did, *id*. The Court would cautiously suggest that the sheer proximity of one week would at least be circumstantial evidence from which a jury might conclude that the defendant knew of the workers' compensation settlement and acted upon its earlier and alleged threat.

The Court is not compelled by the evidence. By its nature it is thin and of a self-dealing kind. But, the Court seems constrained to concede that, once on the stand, a

11

reasonable jury might credit a persuasive display by the plaintiff over all of the other considerations that make the story less than plausible on paper.

As a final consideration, the defendant argues that the plaintiff's claim must fail because he has conceded that the defendant's professed legitimate and non-retaliatory motive for termination was true. Specifically, the defendant terminated the plaintiff's employment for substandard performance, a physical altercation with Mitchell, and poor attendance. (Carlisle Dep. at 38, 78-79; Kerley Dep. at 4.) The Court would agree that the plaintiff essentially confessed to substandard performance and some absenteeism, although maybe not as effectively as the defendant would recommend. (Pl. Dep. at 199-200, 205.) The problem, however, is that the determinative factor test for causation does not require proof that the improper and retaliatory reason was the sole one. *See Wallace v. Milliken & Co.*, 406 S.E.2d 358, 360 (S.C. 1991). So while the plaintiff may have been fired in part because of performance related issues, if he would not have been terminated "but for" his workers' compensation claim, he has satisfied the proof requirement. *See id.* Accordingly, evidence of the plaintiff's agreement with certain performance related accusations cannot be dispositive of the matter in light of his evidence that the workers' compensation claim was the real and motivating factor, without which his termination would not have occurred. To the Court, the call is close. It seems proper, as a matter of law, that a jury make it.

### III.     Alternative Recommendation

Having recommended dismissal of the plaintiff's federal claims against the defendant pursuant to ERISA and the ADA, it is within the district court's discretion to decline to exercise jurisdiction over the plaintiff's state law claim for retaliation. *See* 28 U.S.C. § 1367(c); *Tripp v. Charlie Falk's Auto Wholesale Inc.,* 290 Fed. Appx. 622, 632 (4th Cir. 2008); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the

federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.") If the district court so chooses, the dismissal would be without prejudice to any refiling in state court of that claim. It does not appear that removal and jurisdiction in this Court was based on a diversity of citizenship of the parties. [See Doc. 1.]

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment be GRANTED as to the plaintiff's ADA and ERISA claims. The Court, however, recommends that the defendants' motion for summary judgment be DENIED as to the plaintiff's workers' compensation claim. In the alternative, if the district court adopts the recommendation as to the ADA and ERISA claims, then it may also be inclined to dismiss, without prejudice, the plaintiff's state law workers' compensation claim.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>United States Magistrate Judge

December 3, 2009
Greenville, South Carolina