IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Brian Richardson, | ) | |
| | ) | C.A. No. 6:08-3186-HMH-BHH |
| Plaintiff, | ) | |
| | ) | **OPINION & ORDER** |
| vs. | ) | |
| | ) | |
| K.C. Concepts, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Amended Report and Recommendation[1] of United States Magistrate Judge Bruce Howe Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[2] Brian Richardson ("Richardson") alleges causes of action for retaliatory discharge pursuant to S.C. Code Ann. § 41-1-80 and wrongful termination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.[3] Defendant K.C. Concepts, LLC ("KCC") filed a motion for summary judgment on

---

[1] Magistrate Judge Hendricks filed an initial Report and Recommendation on December 3, 2009. However, on December 8, 2009, Defendant filed a motion for reconsideration which the magistrate judge granted in part and denied in part. As a result of Magistrate Judge Hendricks' ruling on the motion for reconsideration, an amended Report and Recommendation was filed on December 29, 2009.

[2] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1)(2006).

[3] Richardson also alleged a cause of action for interference with his Employment Retirement Income Security Program ("ERISA") rights under 29 U.S.C. § 1140. However, Richardson has conceded that "[a]fter reviewing Defendant's Summary Judgment Brief and

1

April 16, 2009. Magistrate Judge Hendricks recommends granting KCC's motion for summary judgment and dismissing all claims with prejudice. (Am. Report and Recommendation 15.) After review, the court adopts the magistrate judge's Amended Report and Recommendation and grants KCC's motion for summary judgment.

## I. Factual and Procedural History

Richardson began working for Parker Carlisle ("Carlisle") and Carlisle Construction in August 1997. (Pl. Mem. Opp'n Summ. J. 2.) Carlisle Construction was the sole proprietorship of Carlisle. (Def. Mem. Supp. Summ. J. 2.) In 2004, while working for Carlisle, Richardson fell from a ladder causing injuries to his "knee and back" ("2004 fall"). (Pl. Mem. Opp'n Summ. J. 6.) Richardson filed a workers' compensation claim "and the SC Workers' Compensation Commission ("WCC") issued an interim order on July 26, 2006, and its final dispositive order on August 27, 2007." (Id.)

In April 2005, Carlisle Construction discontinued its operations and Carlisle entered into business with Michael Kerley ("Kerley") forming KCC. (Def. Mem. Supp. Summ. J. 2.) Richardson continued to work for Carlisle and KCC. (Id. at 2-3.) KCC alleges that "Richardson worked successfully for KCC until the spring of 2007, when his attendance, performance, and attitude deteriorated." (Id. at 3.) According to Richardson, in July 2007, he was assaulted by Paul Mitchell ("Mitchell"), a KCC employee that Richardson supervised. (Pl. Mem. Opp'n Summ. J. 6.) KCC alleges, however, that the altercation was mutual and "[b]oth Richardson and Mitchell were suspended as a result of that incident." (Def. Mem. Supp. Summ. J. 4.)

---

evidence adduced during discovery, [he] has insufficient evidence to survive summary judgment on his ERISA interference claim." (Pl. Mem. Opp'n Summ. J. 1.) Therefore, the court grants KCC's motion for summary judgment on the ERISA cause of action.

2

Richardson concedes that his suspension was "warranted for handling the situation in the wrong way." (Id. Ex. A (Richardson Dep. 175).) Richardson received injuries from the altercation and filed a workers' compensation claim on the matter. (Pl. Mem. Opp'n Summ. J. 6.) "Ultimately, . . . Richardson was never compensated for this injury . . . nor were his medical bills relating thereto paid." (Id.)

"During the late spring or early summer of 2007, Carlisle and Kerley noticed a decline in Richardson's performance, culminating during August 2007, in numerous absences." (Def. Mem. Supp. Summ. J. 4.) "Based upon Richardson's substandard performance, his altercation with Mitchell, and his poor attendance, Carlisle and Kerley decided to terminate Richardson's employment . . . on September 14, 2007." (Id.) Richardson contends that he was terminated because of his disability and in retaliation for pursuing workers' compensation benefits. (Compl., generally.)

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-

movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**B. Objections to the Amended Report and Recommendation**

Both Richardson and KCC filed objections to the Amended Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

**1. Richardson's Objections**

Upon review, the court finds that many of Richardson's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Amended Report and Recommendation, or merely restate his claims. However, Richardson submits two specific objections to the Amended Report and Recommendation. Richardson alleges that the magistrate judge erred in (1) concluding that the employee numerosity requirement under the ADA is

4

jurisdictional and that Richardson did not present a genuine issue of material fact regarding the number of workers employed by KCC and (2) her conclusions "regarding the workers' compensation retaliation claim by . . . resolving factual disputes in Defendant's favor and erroneously making credibility determinations." (Richardson Objections, generally.)

### a. The ADA's Employee Numerosity Requirement

First, Richardson objects to the magistrate judge's conclusion that the numerical threshold for employees under the ADA is a jurisdictional issue. (Id. at 2.) The magistrate judge explained that it "appears that the Fourth Circuit considers the question as to whether . . . an entity qualifies as an 'employer' to be a jurisdictional one. But the courts of appeals are split." (Am. Report and Recommendation 5 (internal citations omitted).) Richardson argues, however, that the numerical threshold "is an element of [his] claim for relief, not a jurisdictional issue." (Richardson Objections 2.)

The ADA states in pertinent part that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees. . . ." 42 U.S.C. § 12112(a) (1990). An employer is a covered entity under the ADA. § 12111(2). The ADA defines an employer as "a person engaged in an industry affecting commerce who has *15 or more employees* for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." § 12111(5)(A) (emphasis added).[4] Richardson argues that the determination of whether KCC is an employer under the ADA is an element of his ADA claim

---

[4] "The 'current' calendar year is the year in which the alleged discrimination occurred." Binns v. Primary Group, Inc., 23 F. Supp. 2d 1363, 1366 (M.D. Fla. 1998). In the instant case, the current calendar year is 2007, the year of Richardson's termination, and the preceding year is 2006. Thus, the relevant time period at issue in this case is 2006-2007 ("relevant time period").

5

and he has "clearly provided sufficient evidence to survive a [summary judgment] motion." (Richardson Objections 1.)

In Jones v. American Postal Workers Union, 192 F.3d 417, 423 (4th Cir. 1999), the United States Court of Appeals for the Fourth Circuit explained that "[a] district court lacks subject matter jurisdiction over an ADA claim lodged against a defendant that is [not] an employer . . . as th[at] term[] [is] defined in the ADA." In support of this assertion, the Fourth Circuit cited and relied upon Title VII, 42 U.S.C. §§ 2000e, et seq., case law holding that whether an entity constitutes an "employer" within Title VII is a question of subject matter jurisdiction. Id.; see, e.g., Woodard v. Virginia Bd. of Bar Examiners, 598 F.2d 1345, 1346 (4th Cir. 1979) (affirming dismissal of Title VII claim for lack of jurisdiction because Defendant was not an employer within the meaning of Title VII). A district court must dismiss an action if at any time it determines that it lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3). Accordingly, if the ADA's employee numerosity requirement is jurisdictional and KCC fails to meet the requirement, the court must dismiss Richardson's ADA claim regardless of the remaining merits. By contrast, if the employee numerosity requirement is an element of an ADA claim, Richardson may survive summary judgment on that issue by showing that there is a genuine issue of material fact regarding the number of employees. See Fed. R. Civ. P. 56(c)(2).

In Arbaugh v. Y&H Corporation, 546 U.S. 500, 509 (2006), the United States Supreme Court "granted certiorari . . . to resolve conflicting opinions in Courts of Appeals on the question whether Title VII's employee-numerosity requirement . . . is jurisdictional or simply an element of a plaintiff's claim for relief." The United States Supreme Court held that "the threshold

number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Id. at 516.

Like the ADA, Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (1991). "Because the statutory framework of the ADA incorporates by reference many provisions of Title VII and because courts have used Title VII case law as persuasive authority, the principles developed in those cases are instructive on issues concerning the ADA." Binns, 23 F. Supp. 2d at 1365. "Title VII cases are thus persuasive precedent in ADA litigation." Ellis v. Mohenis Serv., Inc., No. 96-6307, 1997 WL 364468, at *4 n.3 (E.D. Pa. June 18, 1997) (unpublished).

Other courts that have considered this issue post-Arbaugh have concluded that the ADA's employee numerosity requirement is an element of the claim for relief. See, e.g., Powers v. Avondale Baptist Church, No. 3:06-363, 2007 WL 2310782, at *2 (M.D. Fla. Aug. 9, 2007) (unpublished) (citing Arbaugh for the proposition that the ADA's numerical employee threshold is not jurisdictional). The Fourth Circuit has yet to address the ADA's employee numerosity requirement post-Arbaugh. However, as noted above, in Jones, the Fourth Circuit cited to Title VII case law in determining that the employee numerosity requirement is jurisdictional. 192 F.3d at 423. Based on the foregoing, the court finds that, in light of Arbaugh, the ADA's employee

numerosity requirement is an element of an ADA claim. As such, the court will treat the employee numerosity requirement as an element of Richardson's ADA claim.[5]

KCC alleges that it does not qualify as an employer under the ADA. (Def. Mem. Supp. Summ. J. 9.) Elaine Blackwell ("Blackwell"), KCC's office manager in charge of maintaining all personnel, payroll, and other office records, states that "KCC did not have 15 or more employees for each working day in each of 20 or more calendar weeks during the years 2006-2007." (Id. Ex. H (Blackwell Decl. ¶ 4).) Richardson alleges that KCC employed "more than 15-20 employees with all the undocumented workers." (Richardson Objections 19.) Richardson has been unable, however, to provide any evidence that KCC employed fifteen or more employees during the relevant time period. Richardson, for example, has not provided the court with any statements from the alleged "undocumented employees," stating that they worked for KCC during the relevant time period. In addition, Richardson has not provided any evidence to suggest that Blackwell's statement regarding KCC's employment records is false. Instead, Richardson merely alleges that the "undocumented workers, who [KCC] kept off the payroll, were utilized in such a manner that [KCC] should be considered their employer for purposes of the ADA." (Id. at 20.) However, "[o]n summary judgment, . . . [Richardson] cannot rest on mere allegations." Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 796 (9th Cir. 1996). Consequently, Richardson has not provided sufficient evidence to establish a genuine issue of material fact regarding the employee numerosity element of his ADA claim.

---

[5] The court notes that even if the ADA's employee numerosity requirement is a jurisdictional issue, Richardson's ADA claim still fails as he has not provided sufficient evidence to refute KCC's proof that it did not employ the requisite number of employees during the relevant time period.

Accordingly, the court grants KCC's motion for summary judgment on Richardson's ADA claim.

### b. South Carolina Workers' Compensation Retaliatory Discharge Claim

Next, Richardson objects that the magistrate judge "erred regarding the workers' compensation retaliation claim by apparently resolving factual disputes in Defendant's favor and erroneously making credibility determinations." (Richardson Objections 20.) The magistrate judge concluded that upon viewing all admissible factual allegations in the light most favorable to Richardson, his retaliatory discharge claim could not survive summary judgment because KCC provided a statutory affirmative defense. (Am. Report and Recommendation 13-14.)

Richardson alleges that he was "terminated in part because []he instituted or pursued a workers' compensation matter" in violation of S.C. Code Ann. § 41-1-80. (Compl. ¶ 10.) Section 41-1-80 states that "[n]o employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law." "In order to prove a claim under § 41-1-80, a plaintiff must establish three elements: 1) institution of workers' compensation proceedings, 2) discharge or demotion, and 3) a causal connection between the first two elements." Hinton v. Designer Ensembles, Inc., 540 S.E.2d 94, 97 (S.C. 2000). Richardson must, therefore, "establish that he would not have been discharged 'but for' the filing of the workers' compensation claim." Id. Additionally, section 41-1-80 also provides, in pertinent part, that "[a]ny employer shall have as an affirmative defense to this section the following: wilful or habitual tardiness or absence from work . . . [or] failure to meet established employer work standards." "While the employer has the

burden of proving its affirmative defenses, the employer does not have the burden of establishing the affirmative defenses are causally related to the discharge." Hinton, 540 S.E.2d at 97.

> *The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual* . . . . The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for h[is] exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Id. (quoting Wallace v. Milliken & Co., 406 S.E.2d 358, 360 (S.C. 1991)). "[T]he ultimate burden is, throughout, upon the employee." Id. (quoting Wallace, 406 S.E.2d at 360).

Richardson timely filed a claim for workers' compensation for the 2004 fall. (Pl. Mem. Opp'n Summ. J. 6.) The WCC "issued an interim order on July 26, 2006, and its final dispositive order on August 27, 2007." Id. Richardson's employment with KCC was terminated on September 14, 2007, approximately two weeks after the WCC's final order. (Id. at 8.) Accordingly, Richardson has presented the court with sufficient evidence to establish the institution of a workers' compensation claim and his discharge by KCC.

Richardson alleges that he has also presented an "overwhelming" amount of evidence to satisfy the causation element. (Richardson Objections 21.) Richardson alleges that Carlisle made "negative comments" toward him regarding his injuries and work restrictions that resulted from the 2004 fall. (Id.) Richardson also alleges that in "the spring of 2005," Carlisle told Mitchell "that [Richardson] would be terminated due to [his] back injury and workers' compensation claim." (Pl. Mem. Opp'n Summ. J. Ex. N (Richardson Aff. ¶ 7).) Mitchell, however, states that he never had any discussions with Carlisle regarding Richardson's health conditions or his workers' compensation claim. (Id. Ex. F. (Mitchell Dep. 19).)

KCC alleges that Richardson's employment was terminated due to "poor attendance, poor performance, and a confrontation with [Mitchell]." (Def. Mem. Supp. Summ. J. 11.) Habitual tardiness or absence from work and failure to meet established employer work standards are affirmative defenses under section 41-1-80. Richardson concedes that in July 2007 his "feet started bothering [him], and [in] July and August [his] feet [problems combined] with [his] liver was why [his] job [performance] was sub-par." (Id. Ex. A (Richardson Dep. 200).) According to Richardson, his problems with his feet made him either unable to perform his job or made it necessary to leave work early or come in late. (Id. Ex. A (Richardson Dep. 207).) Richardson also states that his attendance was a problem during August 2007. (Id. Ex. A (Richardson Dep. 199).)

> The purpose of statutes such as § 41-1-80 is to prohibit an employer from discharging an employee because the employee has filed a claim for workers' compensation benefits where the employee is able–notwithstanding his on-the-job injury–to perform all the duties of his job. Section 41-1-80 . . . do[es] not, however, require an employer to retain an employee who can no longer perform the duties of h[is] job simply because h[is] inability to perform the duties results from an on-the-job injury.[6]

Hines v. United Parcel Service, Inc., 736 F. Supp. 675, 678 (D.S.C. 1990).

Richardson alleges that the close proximity of time between his termination and the settlement of his workers' compensation claim as well as "the complete and total absence of any investigation or write-ups for nearly all bases for [his termination]" presents evidence of pretext. (Pl. Mem. Opp'n Summ. J. 20.) The court finds that Richardson has failed to establish that KCC's reasons for his termination are pretextual. First, Richardson admits that he does not know

---

[6] Richardson states that the problems with his feet were not a result of the 2004 fall, rather they were related to his cirrhosis. (Def. Mem. Supp. Summ. J. Ex. A (Richardson Dep. 207).)

11

whether his workers' compensation claim was a factor in KCC's decision to terminate his employment. (Def. Mem. Supp. Summ. J. Ex. A (Richardson Dep. 192).) Richardson also states that he does not know whether anyone at KCC was aware of his workers' compensation settlement on September 14, 2007. (Id. Ex. A (Richardson Dep. 193-94).) Moreover, although there is a short proximity of time between Richardson's workers' compensation *settlement* and his date of termination, the court notes that Richardson instituted his workers' compensation claim three years prior to being terminated. Section 41-1-80 protects employees from being retaliated against for *instituting* a proceeding under the South Carolina Workers' Compensation Law. Based on the admissible evidence before the court, it does not appear that Richardson was retaliated against in 2007 for an act he instituted in 2004.

Additionally, Richardson concedes that in August 2007, he was frequently absent from work, his work performance was substandard, and his health conditions prevented him from fully performing his duties. (Id. Ex. A. (Richardson Dep. 199-207).) Richardson also does not contest that he was involved in a physical altercation with Mitchell, his subordinate. (Pl. Mem. Opp'n Summ. J. 6.) Consequently, Richardson has failed to raise any genuine issues of material fact that KCC's reasons for terminating his employment are false. The only inference that can be drawn from the evidence is that KCC terminated Richardson as a result of his poor performance, absences, and earlier altercation with Mitchell. (Def. Mem. Supp. Summ. J. 11.) The court finds that KCC has sufficiently raised and proven an affirmative defense to Richardson's retaliation claim. Richardson has failed to prove pretext or that KCC's defense is unworthy of credence.

Richardson also objects that the magistrate judge resolved factual disputes and made erroneous credibility determinations in her discussion of his retaliation claim. (Richardson

Objections 20.)  Upon review, the court finds that the magistrate judge appropriately discussed Richardson's allegations while noting the inconsistencies presented by the objective evidence in the record.  Accordingly, Richardson's objection is without merit.  For the foregoing reasons, the court grants summary judgment to KCC on Richardson's retaliatory discharge claim.

### 2. KCC's Objections

KCC also filed objections to the magistrate judge's Amended Report and Recommendation.  KCC submits two specific objections:  the magistrate judge "mistakenly concluded" (1) "that the Court should not resolve the substance of Richardson's workers' compensation retaliatory discharge claim" and (2) that "some issues of fact likely remain as to the accusation of absenteeism based on [Richardson's] representation that essentially all of the alleged absences were excused."  (KCC Objections 1-2.)  The court finds that both of KCC's objections are moot.  As discussed above, the court finds that KCC has sufficiently established two affirmative defenses due to Richardson's frequent absences and failure to meet work performance standards.  Accordingly, the court has granted KCC's motion for summary judgment on Richardson's retaliation claim.

Therefore, after a thorough review of the magistrate judge's Amended Report and the record in this case, the court adopts Magistrate Judge Hendricks' Amended Report and Recommendation to the extent that it is consistent with this opinion and grants KCC's motion for summary judgment.

Therefore, it is

**ORDERED** that KCC's motion for summary judgment, docket number 36, is granted, and all claims are dismissed with prejudice.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
February 4, 2010